1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **CENTRAL DISTRICT OF CALIFORNIA**

10          **WESTERN DIVISION**

11

12   RAYMOND BRADLEY,                    )          No. CV 12-6723-PLA
                                         )
13                  Petitioner,          )
                                         )          **MEMORANDUM DECISION AND ORDER**
14           v.                          )
                                         )
15   JAMES D. HARTLEY,                   )
                                         )
16                  Respondent.          )
                                         )
17   _____ )

18

19                                        **I.**

20                        **SUMMARY OF PROCEEDINGS**

21          In Los Angeles County Superior Court on February 28, 2011, petitioner pleaded no contest[1]

22   to preventing or dissuading a witness from reporting a crime pursuant to Cal. Pen. Code §

23   136.1(b)(1).  (Lodgments 1; 2 at 2-3; 11 at 11).  Petitioner also admitted that he had suffered one

24

25

26

_____

27      [1]   Pursuant to California law, a plea of no contest has the same effect as a plea of guilty in
     the context of criminal proceedings.  See, e.g., People v. West, 3 Cal. 3d 595, 601, 91 Cal. Rptr.
28   385, 477 P.2d 409 (1970); Cal. Penal Code § 1016.

1   prior strike within the meaning of California's Three Strikes Law.[2] (Lodgments 2 at 3; 11 at 11-12).

2   On that same day, petitioner was sentenced to a total term of four years in state prison, and the

3   remaining counts against him were dismissed. (Lodgments 1; 11 at 13-14). Petitioner did not file

4   a direct appeal. (See Docket No. 65 at 10 n.3).

5       On February 27, 2012, petitioner filed a habeas petition in the Los Angeles County Superior

6   Court raising a claim corresponding generally to his Ground One herein. That court denied the

7   petition on March 7, 2012, with a reasoned opinion. (Lodgments 3-4). Next, on April 9, 2012,

8   petitioner filed a habeas petition in the California Court of Appeal raising claims corresponding

9   generally to his Grounds One and Two herein. That petition was denied on April 19, 2012, with

10  a citation to In re Swain, 34 Cal. 2d 300, 303-04, 209 P.2d 793 (1949). (Lodgments 5-6).

11  Petitioner then raised claims generally corresponding to his Grounds One and Two herein in a

12  habeas petition in the California Supreme Court, which was summarily denied on July 11, 2012,

13  without citation of authority. (Lodgments 7-8). Petitioner also filed an "Ex Parte Motion for

14  Modification and Clarification of Sentence" in the Los Angeles County Superior Court on July 25,

15  2012. The Superior Court construed the Motion as raising the same arguments previously raised

16  in petitioner's habeas petition and denied it on August 7, 2012, as an abuse of the writ process,

17  citing In re Clark, 5 Cal. 4th 750, 767-69 (1993), and In re Bevill, 68 Cal. 2d 854, 863, n.9 (1968).

18  (Lodgments 13-14). Finally, petitioner filed another habeas petition in the California Supreme

19  Court on December 14, 2012, which was denied on February 13, 2013, with citation to Clark, 5

20  Cal. 4th at 797-98. (Lodgments 9-10).

21      On August 6, 2012, petitioner filed a Petition for Writ of Habeas Corpus by a Person in

22  State Custody in this Court. On August 20, 2012, petitioner filed a Motion to Stay the Petition

23  seeking to exhaust his Grounds Three, Four, and Five, which he indicated where unexhausted.

24  In a Minute Order on August 28, 2012, the Court advised petitioner that his Petition was subject

25  to dismissal because it contained exhausted and unexhausted claims, and instructed petitioner

26

27      [2]   Under California's Three Strikes Law, a court must sentence a defendant with one or more
    prior "strikes" to an enhanced sentence. See Cal. Pen. Code § 667. Only "serious" felonies (see
28  Cal. Pen. Code § 1192.7(c)) or "violent" felonies (see Cal. Pen. Code § 667.5(c)) count as prior
    "strikes." See Cal. Pen. Code § 667(d)(1).

1    to show good cause for his failure to exhaust his claims in order to permit the Court to determine

2    whether a stay was appropriate.  (See Docket No. 6).  On August 31, 2012, petitioner filed a

3    revised petition, which still contained exhausted and unexhausted claims.  The Court ordered that

4    Petition filed and deemed it the operative Petition herein.  (See Docket No. 11).  On September

5    17, 2012, petitioner filed a "Motion to Show Cause for Unexhausted Claims," in which he purported

6    to state good cause for his failure to exhaust three of his claims because he "was unaware of

7    procedural requirements."  (See Docket No. 12).  The Court found that petitioner's asserted basis

8    for his delay did not constitute "good cause," denied petitioner's Motion to Stay, and ordered

9    respondent to file a response.  (See Docket Nos. 15-16).

10        On December 31, 2012, following multiple extensions of time, respondent filed a Motion to

11    Dismiss, contending that petitioner's Grounds Two through Five were unexhausted.  (See Docket

12    No. 27).  Petitioner filed an opposition thereto.  (See Docket No. 30).  In a Minute Order on

13    February 26, 2013, the Court informed petitioner that, although his Ground Two was exhausted,

14    his Grounds Three through Five appeared to be unexhausted.  The Court advised petitioner of his

15    options for proceeding with a "mixed" petition.  (See Docket No. 31).  On March 1, 2013, petitioner

16    consented to have the undersigned Magistrate Judge conduct all further proceedings in this

17    matter.[3]  Petitioner then filed a First Amended Petition ("FAP") on March 13, 2013,[4] in which he

18    again raised the same five Grounds.  (See Docket No. 34).  Following several extensions of time,

19    on July 25, 2013, respondent filed a second Motion to Dismiss on the grounds that some of

20    petitioner's claims in the FAP were unexhausted and some were untimely.  (See Docket No. 51).

21    Following an extension of time, petitioner filed an opposition thereto on September 30, 2013.  (See

22    Docket No. 56).

23        On October 29, 2013, the Court found that, although petitioner's Grounds One and Two are

24    timely, his Grounds Three, Four, and Five of the FAP were untimely.  Accordingly, the Court

25    dismissed Grounds Three, Four, and Five with prejudice.  The Court, however, declined to reach

26

27        [3]   Respondent filed a consent to the Magistrate Judge on July 26, 2013.

28        [4]   As a result, the Court denied respondent's December 31, 2012, Motion to Dismiss as moot.

1   respondent's contention that a portion of Ground One also is unexhausted, and ordered

2   respondent to file an answer and return. (See Docket No. 57).  Following several extensions of

3   time, respondent filed an Answer and Return on January 30, 2014.[5]  (See Docket No. 65).  After

4   the Court advised petitioner that the time in which to file a reply had passed, petitioner requested

5   and received one extension of time, to May 14, 2014. (See Docket Nos. 69-71).  Petitioner failed

6   to file a reply, or to request a further extension of time in which to do so.

7          Accordingly, this matter has been taken under submission, and is ready for decision.

8

9                                                **II.**

10                          **STATEMENT OF RELEVANT FACTS**

11          Petitioner was arrested on February 8, 2011, and charged with one felony count, in violation

12   of Cal. Penal Code § 273.5(a), for unlawfully inflicting corporal injury upon Ligia de la Paz, the

13   mother of petitioner's child.  Petitioner also was charged with one misdemeanor count of violating

14   a domestic relations court order pursuant to Cal. Penal Code § 273.6(a).  It was further alleged

15   that petitioner had suffered one prior serious or violent felony in 1997, and that he had suffered

16   three additional prior convictions.  (Lodgment 12).

17          On February 28, 2011, petitioner appeared in Los Angeles County Superior Court for his

18   preliminary hearing.  The prosecution sought to amend the Information to add a felony charge

19   pursuant to Cal. Penal Code § 136.1(b)(1), attempting to prevent or dissuade a victim or witness

20   from testifying. (Lodgments 2 at 2; 11).  The court took a brief recess to allow the prosecutor and

21   petitioner's counsel to listen to an audiotape "related to phone calls that were made allegedly by"

22   petitioner. (Lodgment 11 at 2-4).

23          Petitioner's counsel then informed the court that petitioner "is indicating he will accept the

24   four-year offer made by the People, with the admonition that it's a plea to a strike and an

25

26          [5]   Respondent's contention in the Answer that portions of Grounds One and Two are untimely

27   (see Docket No. 65 at 8) has already been rejected by the Court (see Docket No. 57).  In addition,
     respondent filed an application to lodge petitioner's confidential Probation Report under seal,

28   which was granted.

1 | admission of the previous strike" for a prior felony conviction for first degree residential burglary

2 | in 1997. (Id. at 4-5).  The court asked petitioner whether he was "prepared to accept that, the four

3 | years?"  Petitioner responded, "Yes, sir."  The court then advised petitioner that he would have

4 | to serve "at least 80 percent of that sentence."  Petitioner again responded, "Yes, sir."  (Id. at 4-5).

5 | Further, the court advised petitioner, in relevant part, that (id. at 5):

6 | [T]he People are going to add a new charge, a Count 3, a felony violation of Penal
Code section 136.1(b)(1), dissuading a witness.  You'll admit that charge to be true
7 | by pleading no contest.  You'll also admit you suffered a prior felony conviction for
a first degree residential burglary back in 1997 in Kern County. … [Y]ou will be sent
8 | to state prison for a total of four years, which is mid term, two years, doubled for
your strike prior, for a total of four, and all remaining charges and allegations would
9 | then be dismissed.  Do you understand that?

10 | Petitioner responded by asking if he could be sentenced that day.  After conferring with counsel,

11 | the court agreed to proceed with sentencing and then again asked petitioner: "So four years to

12 | wrap everything up, is that what you're prepared to do?"  Petitioner replied, "Yes, sir."  (Id. at 6).

13 | The following exchange then took place (id. at 6-8):

14 | The court:     Other than what's been said just now here in court about this
agreement, Mr. Bradley, has anyone else made any other promises
15 |               to you or tried in any way to force you to plead no contest to this new
felony and to admit your prior serious felony conviction?
16 | [Petitioner]:  No, sir.
   | The court:     Has anyone threatened you or anyone close to you to get you to do
17 |               so?
   | [Petitioner]:  No, sir.
18 | The court:     Have you had enough time to speak to [] your attorney, about this
matter?
19 | [Petitioner]:  Yes, we did, sir.
   | The court:     Before I accept your plea and your admission, Mr. Bradley, I want to
20 |               make sure you understand all the rights that you have, all the rights
that you're giving up.  I also want to make sure you understand the
21 |               consequences. [¶]  The first consequence is the one we've already
discussed, you're looking at a four-year state prison sentence.  Do
22 |               you understand?
   | [Petitioner]:  Yes, sir.
23 |
   |                                          . . .
24 |
   | The court:     . . . This new charge is [a] felony conviction, which means you cannot
25 |               own or possess a firearm for the remainder of your life. [¶]  More
importantly, Mr. Bradley, it is a serious felony, commonly referred to
26 |               as a strike, which means between this new felony conviction and your
prior residential burglary, if you were to pick up any felony conviction
27 |               in the future, you're looking at the possibility of a three-strike
sentence, 25 years to life in the state prison.
28 | [Petitioner]:  I'm giving my life to the Lord, Your Honor.  I'm done.

1      The court:    Do you understand that?
               [Petitioner]:  Yes, Your Honor.

2

3         After the court had advised petitioner about other consequences of his conviction, petitioner

4 said that he had a question.  Petitioner and his counsel conferred off the record.  Petitioner

5 confirmed that his question had been answered, and the court then continued as follows (id. at 9-

6 10):

7      The court:    The rights that you have, Mr. Bradley, that you're giving up today
                                when you enter the no contest plea, as well as admitting your prior

8                                 serious conviction, include the right to a preliminary hearing.  [¶]  Do
                                you understand your right to a preliminary hearing?

9      [Petitioner]:  Yes, sir.
               The court:    Do you waive and give up your right to a preliminary hearing and the

10                                   rights that go with it?
     [Petitioner]:  Yes, sir.

11      The court:    You also have a right to a speedy and a public trial by a jury of 12
                                  citizens.  Do you understand your right to a jury trial?

12      [Petitioner]:  Yes, sir.
               The court:    Do you waive and give up your right to a jury trial?

13      [Petitioner]:  Yes, sir.
               The court:    At your trial, if you had one, Mr. Bradley, you would have the right to

14                                   confront and cross-examine witnesses that the District Attorney would
                                have to call to prove the charges and the allegations against you

15                                 beyond a reasonable doubt.  You also have the right to put on a
                              defense, which means you can use the subpoena power of the court

16                                 to call witnesses to testify in your own behalf at no cost to you, and
                              you also have the right to remain silent, which is called your right

17                                 against self-incrimination.  [¶]  Do you understand those rights?
     [Petitioner]:  Yes, sir.

18      The court:    Do you give up those rights?
     [Petitioner]:  Yes, sir.

19      The court:    Are you entering a no contest plea to this new felony charge, as well
                                as admitting your prior serious felony conviction, are you doing that

20                                 today freely and voluntarily because you think it's the best thing for
                            you to do?

21      [Petitioner]:  Yes, I am, sir.

22         The court confirmed petitioner's exact name and date of birth and that petitioner was not

23 taking any medication or suffering from any condition that would affect his ability to understand

24 the conversation.  The court then verified once more that petitioner understood that he was

25 "looking at the four-year state prison sentence." (Id. at 10-11).  The exchange, in relevant part,

26 then continued (id. at 11-12):

27

28

| | The court: | In Case MA051806, to Count 3, the added Count 3, a felony violation of Penal Code section 136.1(b)(1), dissuading a witness, to that charge, how do you plead? |
|---|---|---|
| | [Petitioner]: | No contest, sir. |
| | The court: | Do you understand a no contest plea as far as the court is concerned is the same as a guilty plea? |
| | [Petitioner]: | Yes, sir. |
| | The court: | Do you admit you suffered prior felony conviction for a violation of Penal Code Section 459, first degree residential burglary . . ., do you admit that prior serious felony conviction to be true . . .? |
| | [Petitioner]: | Yes, sir. |
| | The Court: | Counsel, join in the waivers, concur in the plea and the admission, stipulate to a factual basis based on the police reports, supplemental reports and criminal history? |
| | [Counsel]: | I do, Your Honor. |
| | The Court: | Thank you.   [¶]   The court finds the defendant has expressly, knowingly, understandingly, intelligently waived his constitutional rights.  The court finds the defendant's plea and admission are freely and voluntarily made with a full understanding of the nature and the consequences; that there is a factual basis for the plea.  The court accepts the defendant's plea and the admission of a prior serious felony conviction.  He stands convicted. |

The court, in accordance with petitioner's request, immediately proceeded to sentence petitioner to a term of four years in state prison.  Pursuant to the plea agreement, the remaining two charges and the allegations that petitioner had suffered three other prior convictions were dismissed.  (Id. at 13-14).

### III.

### PETITIONER'S REMAINING CONTENTIONS

1.      Ineffective assistance of trial counsel on the grounds that counsel:  (a) "coerced" him into accepting a "deal for a 'strike'" "when petitioner was already in custody when phone calls were recorded;" (b) "coerced" petitioner into accepting a plea deal in which a prior strike was used to enhance his sentence; (c) told petitioner that he would face a greater sentence if he refused to accept the plea offer; and (d) did not allow petitioner to "hear evidence against him." (Docket No. 34 at 5, 11).

2.      Petitioner's due process rights were violated when "exculpatory evidence was reviewed without petitioner being present" and when he was not advised of all of the charges against him. (Docket No. 34 at 5, 16, 26).

**IV.**

**STANDARD OF REVIEW**

The Petition was filed after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("the AEDPA").  Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Therefore, the Court applies the AEDPA in its review of this action.  See Lindh v. Murphy, 521 U.S. 320, 336, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

Under the AEDPA, a federal court may not grant a writ of habeas corpus on behalf of a person in state custody "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  As explained by the Supreme Court, section 2254(d)(1) "places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court."  Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389  (2000).  In Williams, the Court held that:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 412-13; see Weighall v. Middle, 215 F.3d 1058, 1061-62 (9th Cir. 2000) (discussing Williams).  A federal court making the "unreasonable application" inquiry asks "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409; Weighall, 215 F.3d at 1062.  The Williams Court explained that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously

1   or incorrectly.  Rather, that application must also be unreasonable." Williams, 529 U.S. at 411;

2   accord: Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  Section

3   2254(d)(1) imposes a "highly deferential standard for evaluating state-court rulings," Lindh, 521

4   U.S. at 333 n. 7, and "demands that state court decisions be given the benefit of the doubt."

5   Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360, 154 L.Ed.2d 279 (2002) (per curiam).  A

6   federal court may not "substitut[e] its own judgment for that of the state court, in contravention of

7   28 U.S.C. § 2254(d)."  Id.; Early v. Packer, 537 U.S. 3, 123 S.Ct. 362, 366, 154 L.Ed.2d 263

8   (2002) (per curiam) (holding that habeas relief is not proper where state court decision was only

9   "merely erroneous").

10       The only definitive source of clearly established federal law under the AEDPA is the

11   holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.

12   Williams, 529 U.S. at 412.  While circuit law may be "persuasive authority" for purposes of

13   determining whether a state court decision is an unreasonable application of Supreme Court law

14   (Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir. 1999)), only the Supreme Court's holdings

15   are binding on the state courts and only those holdings need be reasonably applied. Williams, 529

16   U.S. at 412; Moses v. Payne, 555 F.3d 742, 759 (9th Cir. 2009).  Furthermore, under 28 U.S.C.

17   § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the

18   petitioner rebuts the presumption "by clear and convincing evidence."

19       A federal habeas court conducting an analysis under § 2254(d) "must determine what

20   arguments or theories supported, or, [in the case of an unexplained denial on the merits], could

21   have supported, the state court's decision; and then it must ask whether it is possible fairminded

22   jurists could disagree that those arguments or theories are inconsistent with the holding in a prior

23   decision of [the Supreme Court]."  Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 786, 178

24   L.Ed.2d 624 (2011) ("A state court's determination that a claim lacks merit precludes federal

25   habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

26   decision.").  In other words, to obtain habeas relief from a federal court, "a state prisoner must

27   show that the state court's ruling on the claim being presented in federal court was so lacking in

28

1   justification that there was an error well understood and comprehended in existing law beyond any

2   possibility for fairminded disagreement." Id. at 786-87.

3        The United States Supreme Court has held that "[w]here there has been one reasoned

4   state judgment rejecting a federal claim, later unexplained orders upholding that judgment or

5   rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803,

6   111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).  Here, petitioner raised his Ground One in a habeas

7   petition to the Los Angeles County Superior Court, which denied the claim with a reasoned

8   decision.  Petitioner then raised at least portions of his Ground One and his Ground Two in a

9   habeas petitioner with the California Court of Appeal.  That court rejected the claims without

10  reaching the merits with a citation to Swain, which signifies that the habeas petition was denied

11  for failure to allege with particularity the facts that form the basis of the claims for relief.  See Kim

12  v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986).  The California Supreme Court subsequently

13  rejected petitioner's Grounds One and Two on habeas review in a summary denial.  Under these

14  circumstances, the Court "looks through" the California Supreme Court's unexplained denial to the

15  decisions of the courts below.  See Ylst, 501 U.S. at 803; Shackleford v. Hubbard, 234 F.3d 1072,

16  1079 n.2 (9th Cir. 2000) (district court "look[s] through" to the last reasoned decision as the basis

17  for the state court's judgment).  To the extent that petitioner raised his claims herein in his petition

18  to the Court of Appeal, that court rejected the claims without reaching the merits.  When the state

19  courts deny habeas claims on procedural grounds[6] and do not reach the merits, the Court must

20  review the claims *de novo* rather than under AEDPA's deferential standard.  See, e.g., Cone v.

21  Bell, 556 U.S. 449, 472, 129 S. Ct. 1769, 1784, 173 L. Ed. 2d 701 (2009) (if a state court did not

22  reach of the merits of a claim, "federal habeas review is not subject to the deferential standard that

23  applies under AEDPA … [and] the claim is reviewed *de novo*"); Stanley v. Cullen, 633 F.3d 852,

24  860 (9th Cir. 2011) ("When it is clear … that the state court has not decided an issue, we review

25  that question *de novo*." (omission in original)); Chaker v. Crogan, 428 F.3d 1215, 1221 (9th Cir.

26

27

28  [6]   The Court notes that respondent does not contend that any of petitioner's claims in the FAP
    are procedurally barred.  (See Docket No. 65 at 8).

10

1  2005) (applying *de novo* standard of review to a claim in a habeas petition that was not

2  adjudicated on the merits by the state court).  To the extent that portions of petitioner's Ground

3  One were not raised in his petition to the California Court of Appeal, the last reasoned decision

4  is that of the Los Angeles County Superior Court.  Regardless, as set forth below, because habeas

5  relief is not warranted on either of petitioner's claims under a *de novo* standard of review, it follows

6  that the state courts' rejection of petitioner's claims necessarily was reasonable under the more

7  deferential AEDPA standard of review, if that standard of review applies.  See Berghuis v.

8  Thompkins, 560 U.S. 370, 130 S. Ct. 2250, 2264, 176 L. Ed. 2d 1098 (2010) (where it is unclear

9  whether AEDPA deference applies, court may deny writ of habeas corpus under § 2254 by

10  engaging in de novo review because habeas petitioner will not be entitled to writ under § 2254 if

11  claim can be rejected on de novo review).

12

13                                          **V.**

14                                    **DISCUSSION**

15  **A.     GROUND ONE**

16       In Ground One, petitioner contends that his counsel provided ineffective assistance in the

17  following respects: (a) counsel "coerced" him into accepting a "deal for a 'strike'" when petitioner

18  was already in custody at the time "phone calls were recorded;" (b) counsel "coerced" him into

19  accepting a plea deal that included a prior strike; (c) counsel told petitioner that he would face a

20  sentence of 26 years if he refused to accept the plea offer; and (d) counsel did not allow petitioner

21  to "hear evidence against him" when counsel and the prosecutor played a recording that contained

22  "exculpatory evidence."  (Docket No. 34 at 5, 11-12).

23       Respondent contends that petitioner's Ground 1(a), that "counsel was ineffective for

24  coercing him into accepting a plea bargain even though he was innocent,"[7] is unexhausted

25  _____

26   [7]    The Court notes that it does not understand petitioner to be claiming in his Ground One that
      he was "innocent" merely because he was already in custody at the time the phone calls were
27  recorded.  In his state court habeas petitions, petitioner admitted that he made the phone calls to
      the mother of his children, whom he was charged with abusing.  He argued therein, however, that
28                                                              (continued...)

                                            11

1  because petitioner failed to sufficiently present the claim to the California Supreme Court in either

2  of his habeas petitions.  (Docket No. 65 at 8, 14, 17).  For a court to address an unexhausted

3  claim on the merits, it must be "perfectly clear that the applicant does not raise even a colorable

4  federal claim."  Cassett v. Stewart, 406 F.3d 614, 623-24 (9th Cir. 2005); see also 28 U.S.C. §

5  2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits,

6  notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the

7  State.").  Here, the Court has elected to exercise its discretion to deny any portion of petitioner's

8  Ground One that is unexhausted because, following *de novo* review and as set forth below, the

9  Court finds that petitioner has failed to raise even a colorable federal claim of ineffective

10  assistance of counsel.

11

12  **1.      The Opinion of the Los Angeles County Superior Court**

13  To the extent that any portion of petitioner's Ground One was not raised in his petition to

14  the California Court of Appeal, the Los Angeles County Superior Court denied his ineffective

15  assistance of counsel claim as raised in his first state court habeas petition, in relevant part, as

16  follows (Lodgment No. 4 at 1 (emphasis added, internal citation and some quotation marks

17  omitted)):

18          In the "supporting facts" portion of the Petition, petitioner admits
         that he made a call, attempting to dissuade the alleged victim from
19       attending court proceedings and participating in his prosecution.
         Citing authority related to Penal Code section **136.1(c)**, however,
20       petitioner contends that he was misinformed regarding the elements
         of the dissuading charge, which he claims include that the dissuasion
21       be accompanied by threat of force or violence.
             Petitioner is confused.  A felony violation of Penal Code section
22       136(b) [sic], which carries a penalty of 16 months, 2 years, or three
         years in the state prison, does not require an element of force or

23

24      [7](...continued)

25  "there were never any threats nor any suggestions of violence" in the conversations.  (See, e.g.,
    Lodgment 7 at 3, 13-14).  Rather, the Court construes this portion of Ground One to be premised
26  on petitioner's contention that counsel misinformed him about the elements of the crime, and that
    he could not have used threats or violence because he was incarcerated at the time he made the
27  phone calls.  (See Docket No. 34 at 12 ("petitioner was already in custody at the time of
    conversation between him and his girlfriend which excludes petitioner from preventing witness or
28  victim from reporting a crime")).

1  threat of violence.  On the other hand, a violation of Penal Code
   section 136(c) [sic], which carries of penalty of two years, three years,
2  or four years in the state prison, does require an element of force or
   threat of violence.
3          Petitioner fails to show the existence of any issue with a
   reasonable potential for success in support of his claims of ineffective
4  assistance of counsel.  There is nothing in the Petition that casts
   doubt on the accuracy and reliability of the trial court proceedings.
5  Consequently, petitioner fails to show a fundamental miscarriage of
   justice occurred.

6

7      **2.      Analysis**

8      Initially, to the extent that petitioner is claiming in his Ground One that his no contest plea

9  was involuntary or the product of duress, such a claim is duplicative of petitioner's due process

10 claim that he raises as his Ground Two, and which is addressed below.

11     Second, to the extent that petitioner's ineffective assistance of counsel claim purports to

12 attack pre-plea constitutional errors, petitioner is barred from raising his ineffective assistance

13 claims pursuant to Tollett v. Henderson, 411 U.S. 258,  266-67, 93 S. Ct. 1602, 36 L. Ed. 2d 235

14 (1973).  As stated by the United States Supreme Court in Tollett, 411 U.S. at 267:

15         [A] guilty plea represents a break in the chain of events which has
           preceded it in the criminal process.  When a criminal defendant has
16         solemnly admitted in open court that he is in fact guilty of the offense
           with which he is charged, he may not thereafter raise independent
17         claims relating to the deprivation of constitutional rights that occurred
           prior to the entry of the guilty plea.  He may only attack the voluntary
18         and intelligent character of the guilty plea[.]

19 A plea of "no contest" does not alter the rule that a petitioner is precluded from raising independent

20 claims of constitutional violations that occurred prior to the entry of his plea.  See Ortberg v.

21 Moody, 961 F.2d 135, 137 (9th Cir. 1992).  Rather, when a criminal defendant enters a plea of no

22 contest on the advice of counsel, he may only attack the voluntary and intelligent character of his

23 plea by showing that he entered a plea based on counsel's advice that was below the standard

24 of competence of trial counsels as governed by Strickland v. Washington, 466 U.S. 668, 104 S.

25 Ct. 2052, 80 L. Ed. 2d 674 (1984).  See, e.g., Lafler v. Cooper, 132 S. Ct. 1376, 1384, 182 L. Ed.

26 2d 398 (2012) (reiterating that the Strickland standard applies to claims of ineffective assistance

27 of counsel in the plea-bargaining process); Hill v Lockhart, 474 U.S. 52, 56-57, 106 S. Ct. 366, 88

28 L. Ed. 2d 203 (1985).  Here, petitioner does not expressly allege that his counsel advised him to

13

1  enter a plea.  Further, to the extent that petitioner's Ground One arises from a claim that his

2  constitutional rights were violated because counsel prevented him from examining evidence prior

3  to his plea, or is directed at conduct of counsel prior to the entry of petitioner's no contest plea, his

4  Ground One is foreclosed by Tollett.[8]

5         Third, to the extent that petitioner is purporting to allege that trial counsel's advice caused

6  him to enter a plea of no contest, and that counsel's advice to enter the plea fell below "the range

7  of competence demanded of attorneys in criminal cases," petitioner has failed to show either that

8  counsel's advice was objectively unreasonable, or that, but for his counsel's errors, there is a

9  reasonable probability that he would not have pleaded no contest and would instead have insisted

10  on going to trial.  See Hill, 474 U.S. at 56-57, 59; Strickland, 466 U.S. at 687-88, 690, 692, 694.

11  Petitioner bears the burden of establishing both components of the Strickland standard.

12  Strickland, 466 U.S. at 687; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir.

13  1995).  Moreover, courts generally maintain a "'strong presumption that counsel's conduct falls

14  within the wide range of reasonable professional assistance.'"  Rios v. Rocha, 299 F.3d 796, 805

15  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 689).

16         As noted by the Los Angeles County Superior Court in rejecting petitioner's ineffective

17  assistance claims, petitioner is confused about the elements of the crime to which he entered a

18  no contest plea.  Petitioner was charged pursuant to Cal. Penal Code § 136.1(b).  During his plea

19  hearing, petitioner was informed that he was being charged with a "felony violation of Penal Code

20  section 136(b)(1), dissuading a witness."  (Lodgment 11 at 5).  This provision does not require any

21

22         [8]   The United States Supreme Court has recognized that the bar on attacking pre-plea
23  constitutional errors does not apply when the claims raise a "jurisdictional" question that implicates
   the government's power to prosecute the defendant.  See, e.g., United States v. Johnston, 199
24  F.3d 1015, 1019 n. 3 (9th Cir. 1999) ("The Court has subsequently limited the scope of those
   exceptions to include only those claims in which, judged on the face of the indictment and record,
25  the charge in question is one which the state may not constitutionally prosecute.") (citing United
26  States v. Broce, 488 U.S. 563, 574-76, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989)); see also Menna
   v. New York, 423 U.S. 61, 62, 96 S. Ct. 241, 46 L. Ed. 2d 195 (1975) (holding that the bar on
27  collateral challenges to pre-plea errors did not apply to a claim that the indictment under which a
   defendant pleaded guilty placed him in double jeopardy).  Here, petitioner does not purport to raise
28  any "jurisdictional" errors.

14

1  threat or force.  Rather, Penal Code § 136.1(c)(1) prohibits the same act when it is "accompanied

2  by force or by an express or implied threat of force or violence."  Cf. Cal. Penal Code. § 136.1(b)

3  ("Except as provided in subdivision (c), every person who attempts to prevent or dissuade another

4  person who has been the victim of a crime or who is a witness to a crime from doing any of the

5  following …")  with  §  136.1(c)(1)  ("Where  the  act  [described  in  subdivision  (a)  or  (b)]  is

6  accompanied by force or by an express or implied threat of force or violence, upon a witness or

7  victim  or  any  third  person  or  the  property  of  any  victim,  witness,  or  any  third  person.").

8  Accordingly, to the extent that petitioner's Ground One arises from a claim that counsel's advice

9  to enter a plea to Penal Code. § 136.1(b) was outside the wide range of reasonable professional

10  assistance because no evidence existed that he used force or a threat of force or violence,

11  petitioner cannot show either deficient performance or prejudice.  Further, to the extent that

12  petitioner's Ground One arises from a claim that counsel's advice was objectively unreasonable

13  because his plea resulted in a sentence enhancement, the record reflects that petitioner was

14  alleged to have suffered one prior serious or violent felony and three additional prior convictions.

15  (See Lodgment 12).  Petitioner admitted in open court that he had suffered a prior felony

16  conviction after acknowledging that he understood that such an admission would double his

17  sentence on the count to which he was entering a plea and acknowledging that he understood that

18  any future felony conviction could result in a three-strike sentence of 25-years-to-life.  (See

19  Lodgment 11 at 5-11).  Petitioner does not purport to contend that he did not, in fact, suffer this

20  prior felony conviction, nor does he purport to identify any aspect of counsel's advice to enter a

21  no contest plea and to admit to his prior strike rather than proceed to trial on the three counts on

22  which he was charged that was even arguably unreasonable.  Moreover, petitioner does not

23  purport to argue that, but for counsel's advice to admit to his prior felony conviction, he would not

24  have entered the no contest plea.  Finally, to the extent that petitioner's Ground One arises from

25  a claim that counsel's advice to enter the plea was objectively unreasonable because petitioner

26  would face a greater sentence were he to proceed to trial, petitioner does not purport to show that

27  such advice was incorrect or erroneous.  To the contrary, because two of the three charges

28  against petitioner were dismissed in connection with his no contest plea, the record reflects that

1  he did in fact face a reasonable probability of a greater sentence had he not followed counsel's

2  advice to enter a no contest plea on one count and instead proceeded to trial on all three counts.

3  Based on its *de novo* review, the Court finds that petitioner's no contest plea precludes

4  petitioner from raising his Ground One as alleged in the FAP, and that, to the extent that his

5  Ground One is not barred, petitioner has failed to raise even a colorable claim of ineffective

6  assistance of counsel. Accordingly, habeas relief is denied on petitioner's Ground One.

7

8  **B.      GROUND TWO**

9  In Ground Two, petitioner contends that his due process rights were violated because he

10  was coerced into entering a plea before he had reviewed evidence pertaining to the charge

11  against him, and because it was never explained to him that "this offense absent 'threats' or force

12  of violence was not a 'strikable' offense." (Docket No. 34 at 5, 16, 26). The Court construes this

13  claim as contending that petitioner's plea was not voluntary and intelligent because he was misled

14  about the elements of the crime to which he pleaded no contest.[9] Initially, as discussed above,

15  to the extent that petitioner's due process claims purport to rest on a contention that he was

16  prevented from examining evidence prior to his plea, such a claim is foreclosed by <u>Tollett</u>.

17  "The longstanding test for determining the validity of a guilty plea is 'whether the plea

18  represents a voluntary and intelligent choice among the alternative courses of action open to the

19  defendant.'" <u>Hill</u>, 474 U.S. at 56 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S. Ct. 160,

20  27 L. Ed. 2d 162 (1970)); <u>see</u> <u>also</u> <u>Boykin v. Alabama</u>, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L.

21  Ed. 2d 274 (1969). "A plea of guilty is voluntary 'only if it is "entered by one fully aware of the

22  _____

23  [9]    The Court notes that petitioner not only is mistaken about the elements of the crime to
   which he entered a plea, he also is mistaken that the crime is not a "strikable" offense. The record
24  reflects that petitioner pleaded no contest to a felony pursuant to Penal Code § 136.1(b)(1), which
   could be charged as either a felony or a misdemeanor. In petitioner's case, he was charged with
25  one felony count in 2011. (<u>See</u> Lodgment 11 at 5, 7, 10, 11). Pursuant to California law, "all
   felony violations of Penal Code section 136.1 are serious felonies." <u>See</u> <u>People v. Neely</u>, 124 Cal.
26  App. 4th 1258, 1266, 22 Cal. Rptr. 3d 274 (Cal.App. 2 Dist. 2004); <u>see</u> <u>also</u> <u>People v. Johnson</u>,
   226 Cal. App. 4th 620, 626, 171 Cal. Rptr. 3d 920 (Cal.App. 2 Dist. 2014) (noting that "witness
27  intimidation" in violation of Cal. Penal Code § 136.1 was added to the "list of serious felonies" in
28  2000).

1   *direct* consequences" of his plea.'" Torrey v. Estelle, 842 F.2d 234, 235 (9th Cir. 1988) (emphasis

2   in original).  A guilty plea obtained through coercion is involuntary.  See Brady v. United States,

3   397 U.S. 742, 750, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970).  "The purpose of the 'knowing and

4   voluntary' inquiry ... is to determine whether the defendant actually *does* understand the

5   significance and consequences of a particular decision and whether the decision is uncoerced."

6   Godinez v. Moran, 509 U.S. 389, 401 n.12, 113 S. Ct. 2680, 125 L. Ed. 2d 321 (1993) (emphasis

7   in original).  The relevant inquiry is whether petitioner's guilty plea was voluntary and intelligent

8   under the totality of the circumstances.  See Alford, 400 U.S. at 31; Brady, 397 U.S. at 749.

9   Further, "[a] habeas petitioner bears the burden of establishing that his guilty plea was not

10  voluntary and knowing." Little v. Crawford, 449 F.3d 1075, 1080 (9th Cir. 2006), cert. denied, 551

11  U.S. 1118 (2007).

12          Here, to the extent that petitioner is claiming that his plea was not voluntary and intelligent,

13  a defendant's representations at a plea hearing, as well as any findings made by the judge at the

14  time of accepting the plea, constitute a "formidable barrier in any subsequent collateral

15  proceedings." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977);

16  see also Muth v. Fondren, 676 F.3d 815, 821 (9th Cir.), cert. denied, 133 S. Ct. 292, 184 L. Ed.

17  2d 172 (2012) (quoting Blackledge, 431 U.S. at 73-74).  The record reflects that, at his plea

18  hearing, petitioner acknowledged that he had had sufficient time to speak with his counsel, and

19  he also conferred with counsel during the hearing at his request.  Petitioner affirmatively stated

20  in open court that no one outside of court had made any other promises to petitioner or had

21  attempted to force him to plead no contest.  Petitioner also expressly acknowledged that he would

22  be sentenced to four years in state prison, that the new charge was a serious felony conviction

23  that would constitute petitioner's second strike, and that, if he received another felony conviction

24  in the future, he faced the possibility of a three-strike sentence.  The record also reflects that

25  petitioner stated that he understood the constitutional rights that he was waiving, and stated that

26  he wished to give up each of those rights.  (See Lodgment 11 at 5-11).  Moreover, when the trial

27  court asked petitioner, "Are you entering a no contest plea to this new felony charge … are you

28  doing that today freely and voluntarily because you think it's the best thing for you to do?",

1  petitioner responded, "Yes, I am, sir." (Id. at 10). Based on petitioner's responses, the trial court

2  concluded that petitioner had "expressly, knowingly, understandingly, intelligently waived his

3  constitutional rights" and that his plea and admission of his prior strike were "freely and voluntarily

4  made with a full understanding of the nature and the consequences." (Id. at 12). Finally, the trial

5  court found that a factual basis supported petitioner's plea. (Id.).

6  Nothing in the record reflects the slightest hesitation on petitioner's part to enter the no

7  contest plea. Rather, the record is clear that petitioner's plea was "entered by one fully aware of

8  the direct consequences.'" Torrey, 842 F.2d at 235. Further, petitioner's express denial during

9  the plea colloquy that any threats or coercion were used to force him to enter the plea is

10  considered to be a strong indicator of the voluntariness of his no contest plea. See Blackledge,

11  431 U.S. at 74 ("solemn declarations in open court carry a strong presumption of verity.");

12  Sanchez, 50 F.3d at 1455. On this record, the Court simply has no basis for finding that

13  petitioner's no contest plea did not "represent[] a voluntary and intelligent choice among the

14  alternative courses of action open to [him]." Hill, 474 U.S. at 56 (citation omitted).

15  Based on its de novo review, the Court finds that petitioner's no contest plea was voluntary

16  and intelligent. Accordingly, habeas relief is denied on petitioner's due process claims.

17

18  **C.     REQUEST FOR AN EVIDENTIARY HEARING**

19  Petitioner contends that he is entitled to an evidentiary hearing to "cross examine" the

20  contents of the audio recording of his telephone calls. (Docket No. 34 at 11, 26, 27). As the

21  Supreme Court held in Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398, 179 L. Ed. 2d 557

22  (2011), review of state court decisions under § 2254(d)(1) "is limited to the record that was before

23  the state court that adjudicated the claim on the merits." Accordingly, to the extent that the Court

24  has found that petitioner is not entitled to habeas relief under 28 U.S.C. § 2254(d)(1), this finding

25  is dispositive of petitioner's request for an evidentiary hearing. Further, to the extent that

26  petitioner's claims were not decided on the merits by the California courts, petitioner's request for

27  an evidentiary also is denied because the Court was able to resolve those claims by reference to

28  the state court record. See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998) (holding, in a

1  case pre-dating the Supreme Court's reversal of the Ninth Circuit in Pinholster, that "an evidentiary

2  hearing is not required on issues that can be resolved by reference to the state court record").

3

4  **D.      CERTIFICATE OF APPEALABILITY**

5       Under Rule 11(a) of the Rules Governing § 2254 Cases, a court must grant or deny a

6  certificate of appealability ("COA") when it denies a state habeas petition.  See also 28 U.S.C. §

7  2253(c).

8       A petitioner may not appeal a final order in a federal habeas corpus proceeding without

9  first obtaining a COA.  See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  A COA may issue "only

10  if . . . [there is] a substantial showing of the denial of a constitutional right."  28 U.S.C. §

11  2253(c)(2).  A "substantial showing . . . includes showing that reasonable jurists could debate

12  whether (or, for that matter, agree that) the petition should have been resolved in a different

13  manner or that the issues presented were 'adequate to deserve encouragement to proceed

14  further.'"  Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (citation

15  omitted); see also Sassounian v. Roe, 230 F.3d 1097, 1101 (9th Cir. 2000).  Thus, "[w]here a

16  district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must

17  demonstrate that reasonable jurists would find the district court's assessment of the constitutional

18  claims debatable or wrong."  Slack, 529 U.S. at 484.

19       The Court concludes that, for the reasons set forth above, jurists of reason would not find

20  the Court's assessment of petitioner's claims debatable or wrong.  Accordingly, a certificate of

21  appealability is **denied**.  Petitioner is advised that he may not appeal the denial of a COA, but he

22  may ask the Ninth Circuit Court of Appeals to issue a COA under Rule 22 of the Federal Rules of

23  Appellate Procedure.  See Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

24  /

25  /

26  /

27  /

28

**VI.**

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Judgment is entered denying petitioner's request for an evidentiary hearing and denying and dismissing the First Amended Petition with prejudice.  A certificate of appealability is also denied.

DATED: July 10, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

20